In re BAILEY.

Ex parte PARIAN PAINT CO.

Ex parte PERKINS MFG. CO.

(District Court, D. South Carolina. February 4, 1910.)

1. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—GOODS HELD ON CONSIGNMENT.

Under Civ. Code S. C. 1902, § 2655, which provides that every agreement of purchase or bailment of personal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be void "as to subsequent creditors or purchasers for a valuable consideration without notice," unless in writing and recorded as required of mortgages, as construed by the Supreme Court of the state, an agreement of consignment under which goods were delivered to a bankrupt to be sold and accounted for as agent, otherwise valid, is not void as against the bankrupt's trustee, or general creditors, because not recorded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—GOODS HELD ON CONSIGNMENT.

Where goods were in fact shipped to and held by a bankrupt under a valid consignment contract, to be sold as agent, and not otherwise, the fact that he subsequently gave notes for their price for the accommodation of the payee, which were not enforced, but renewed when due, he being called on only to account for the goods sold, is not conclusive that the contract was changed into a sale.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

In the matter of G. W. Bailey, bankrupt. On review of two orders of referee. Affirmed as to one, and reversed as to the other.

Geo. T. Magill, for Parian Paint Company.

Grier & Park, for Perkins Mfg. Company.

Richardson & Cunningham, for bankrupt.

BRAWLEY, District Judge. These claims were heard together, upon a petition to review the report of the referee.

1. The Parian Paint Company, under an agreement in writing dated April 2, 1907, agreed to furnish to the bankrupt, who was doing business under the name of the Bailey Builders' Supply Company, paints and painters' supplies, upon receipt of orders, the same to be sent on consignment; Bailey agreeing to keep an itemized statement of all paints and supplies sold by him, and to pay for the same when sold, at the end of every 60 days, and to return to the Parian Paint Company, when called upon, all paints and supplies which he had on hand. Bailey filed his voluntary petition in bankruptcy in the autumn of 1909, and thereafter the Parian Paint Company filed its petition for the return to it of certain paints and painters' supplies, which were readily identified. The referee in bankruptcy, to whom the petition was referred, found as a matter of fact that the paints and painters' supplies were furnished under a contract of consignment, that the same was not recorded, and that the claims represented by the cred-

itors who have filed this petition for review have not been reduced to liens, and were simple contract claims, all of which had been incurred by the bankrupt subsequent to the date of the contract of consignment. He thereupon made an order directing the trustee to turn over to the petitioners all of the goods and merchandise in his possession belonging to the Parian Paint Company, and that all accounts that said company could trace in the hands of the purchasers should also be turned over to it. The petition for review impeaches the correctness of this decision, and in the argument the sections of the Civil Code of South Carolina which are supposed to have a bearing upon the question have been cited.

Section 2655 is as follows:

"Every agreement between the vendor and the vendee, bailor or bailee, ot personal property, whereby the vendor or bailor shall reserve to himself any interest in the same shall be null and void as to subsequent creditors or purchasers for valuable consideration without notice, unless the same be reduced to writing, and recorded in the manner now provided by law for the recording of mortgages."

Section 2456 of the Code provides that:

"All deeds of conveyance of lands, tenements or hereditaments," etc., "and generally all instruments in writing now required by law to be recorded," etc., "shall be valid so as to affect the time of such delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, only when recorded within forty days from the time of such delivery or execution, in the office of register of mesne conveyances," etc., "where the property affected thereby is situated."

These sections have been frequently interpreted by the Supreme Court of South Carolina. The latest pertinent case is Armour & Co. v. Ross, 78 S. C. 294, 58 S. E. 941, 1135. This was an action to recover a quantity of bacon and lard consigned by plaintiffs to one Butler as their agent, and by him turned over to Ross & Turner, who claimed to be purchasers for valuable consideration without notice. The lower court held that the agreement between the plaintiffs and Butler was null and void as to subsequent creditors and purchasers for valuable consideration without notice, as it was not recorded within the time required by section 2655; but the Supreme Court reversed this decision, on the ground that this section of the Code had no application to simple or unsecured creditors, but applied only to those whose claims had been reduced to judgment, or to those holding other liens on the property before receiving notice of the unrecorded instrument, and that the amendment to section 2456, above cited (by inserting the words "whether simple contract creditors or lien creditors"), was not applicable, as that section and section 2655 are separate and distinct.

The precise question involved in this petition for review was settled by the Court of Appeals of this Circuit in Pridmore v. Puffer Mfg. Co., 163 Fed. 496, 90 C. C. A. 42. That was a case in bankruptcy, where petitioners sought to recover from the trustees certain property consigned to the bankrupt under a contract similar to that in this case, and the District Court held that it was governed by the case of York Mfg. Co. v. Cassell, 201 U. S. 352, 26 Sup. Ct. 481, 50 L. Ed.

782, which held that the "trustee takes the property of the bankrupt in cases unaffected by fraud in the same plight and condition that the bankrupt himself held it, subject to all the equities impressed upon it in the hands of the bankrupt." The Court of Appeals affirmed this judgment. It was contended there, as here, that the contracts in question were of a character such as are required to be recorded under section 2456, Code of Laws of South Carolina, and that subsequent creditors of the bankrupt, who had no notice of the secret agreement between the claimant and the bankrupt, had rights superior to those of the claimant. The Court of Appeals in its opinion says:

"We have carefully considered the contention of counsel representing the trustee, in which it is insisted that the statute of South Carolina (Civ. Code, § 2456), which relates to secret liens, applies, and are of opinion that under the circumstances in this case the decisions relied upon to sustain such contention do not apply to the case at bar."

The judgment of the referee is in accord with this opinion, and the same is in all respects affirmed.

2. The referee, upon hearing the petition of the Perkins Manufacturing Company of like character with that just disposed of, held "that the Perkins Manufacturing Company and the bankrupt did enter into a contract some time during the month of February, 1908, which was a consignment contract"; but inasmuch as the general manager of the Perkins Manufacturing Company, subsequent to the contract, took notes from the Bailey Builders' Supply Company, he decided that said notes were taken practically to close the said account, and the contract of consignment was changed thereby; and his decision was therefore against the petitioner's claim. It appears from the testimony that the bankrupt in February, 1908, entered into an arrangement with the Perkins Manufacturing Company, of Augusta, Ga., by which the latter company was to consign certain doors, sashes, blinds, and other lumber to Bailey, who was to sell the same as their agent, and to account to them from time to time for the proceeds of sale, and upon his return to his home at Greenwood Bailey sent them an agreement substantially similar to that which he had with the Parian Paint Company, but this agreement was not signed by either party. The referee holds, and the testimony corroborates his finding, that the goods were forwarded under a consignment contract; both parties understanding that Bailey was to acquire no interest whatever in the goods, that he was to take and handle them for the Perkins Manufacturing Company, and such profit as he was able to make on the sale of the goods over and above the price at which they were billed to him was to be his commission.

It appears that before the agreement was made something was said about the Perkins Company taking notes, and that the attorney for the Perkins Company advised them against taking notes for the supplies furnished, but some time after the goods were shipped Toale, representing the Perkins Manufacturing Company, came to Greenwood and asked Bailey to sign notes representing the value of the goods shipped. These notes matured in 30, 60, and 90 days. The testimony of Perkins is that the notes were taken for two reasons:

First, "for our accommodation"; second, "to keep the records of the shipments clear." These notes were discounted by the Perkins Manufacturing Company in Augusta, and were renewed whenever they fell due; but the understanding between Bailey and the Perkins Manufacturing Company was that Bailey should be required to pay thereon only what moneys he derived from the sale of the goods. All the parties to the transaction say, and all of the testimony shows, that the goods were shipped upon a consignment contract, and that the notes were not given or accepted in payment therefor. After the notes were given the Perkins Manufacturing Company went to Bailey's place of business and took stock of the goods in his hands. This act is consistent with the theory of the petitioner that Bailey was its agent, and is not consistent with the theory that Bailey, by giving the notes, became the purchaser.

The advice of the attorneys for Perkins & Co., given, it appears, before the agreement was actually reached, was that if they took notes in payment they could not hold Bailey as simply an agent; but all the parties agree, and the referee finds, that the actual agreement between the parties was a consignment contract. All the parties to the transaction agree that the giving and taking of the notes was not intended to change the character of the relations between the parties, that they were not given or accepted in payment for the goods shipped, and there is no testimony whatever in contradiction. There was no attempt to enforce the payment of the notes as they fell due, and Bailey was not called upon to pay the same, or any part thereof, until after he had actually sold the goods. Bailey was conducting a small business at Greenwood, in this state. and there is nothing in the testimony that warrants the assumption that the Perkins Manufacturing Company would have furnished as much as $2,800 worth of builders' supplies solely upon his personal credit; and as the testimony is clear that the goods were furnished upon a consignment contract, under which Bailey was given a price list and was to be called upon to pay only when the goods were sold, taking as his commission the difference between the price list and the price at which he actually sold the goods, and that it was not the intention of either of the parties that the notes were given or accepted in payment for the goods, and that after the giving of the notes an account was taken of the stock on hand from time to time, showing that the parties did not consider that the original contract of consignment was to be modified by the giving of the notes, I am of opinion that it would be going too far to hold that the mere taking of notes, in the circumstances stated, changed the relation of parties from bailor and bailee to that of creditor and debtor, when both parties agree in their testimony that such was not their intention.

It is therefore ordered and adjudged that the decision of the referee on that point be reversed, and the case is remanded, with directions to enter an order as upon a consignment contract, similar to that entered in the case of the Parian Paint Company.