14552

HAY COTTON CO., INC., v. McLEOD *ET AL.*.

(193 S. E., 438)

*Messrs. Kirkland & DeLoach,* for appellant, cite:

*Messrs. W. L. DePass, Jr.* and *Allen B. Murchison,* for respondents, cite:

October 26, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Appellant, a corporation, is engaged in the business of buying (and selling) cotton. The respondent A. L. McLeod is the duly elected cotton weigher for De Kalb township, Kershaw County, and the respondent National Surety Corporation is the surety on the bond of McLeod; the cotton weigher for this township being required to make and file with the Clerk of Court of Kershaw County a bond with sufficient surety conditioned upon the faithful discharge of his duty as such cotton weigher.

On October 2, 1936, at about 1:30 p. m., a Mr. Hinson sold a bale of cotton to appellant, and then carried the cotton to the platform furnished by the respondent, McLeod, where the cotton was weighed and tagged, and placed with other cotton purchased and owned by appellant. Mr. Hinson was given a statement of the bale weight, and in accordance therewith, and at the agreed price of 14 cents per pound, appellant settled with Hinson. Between 3 and 4:30 o'clock of the same afternoon, when appellant sent its truck to the platform for this bale and other cotton, this bale was missing and cannot be found.

Appellant brought suit against respondents for the value of the cotton, represented by the amount paid therefor, in the magistrate's Court, which Court found a verdict in favor of appellant, but upon appeal to the Court of Common Pleas the judgment was reversed, and judgment in favor of respondents ordered. An appeal followed to this Court.

In addition to the facts hereinbefore set forth, there should be included the following: There are three other cotton buyers at Camden (De Kalb township), each having a certain space on the cotton platform furnished by respondent McLeod where bales of cotton are placed after being weighed, according to the purchaser, so that there are four spaces. When cotton is thus placed, the buyers remove it, and in some instances trade with or sell to each other, without notice to, or consulting with, the respondent, McLeod. After the bale of cotton in question had been weighed and placed on the space allowed appellant, where it

already had several other bales, an agent of appellant sampled it and carried the sample and the stub off the bale ticket to appellant.

Appellant states the question raised by the appeal to be:

"Did the delivery of the bale of cotton by the seller to respondent McLeod constitute a bailment?

"II. Did the Act of 1935 [Act March 15, 1935, 39 St. at Large, p. 110] limit the liability and responsibility of respondent McLeod to the actual weighing of the cotton?

"III. Did a delivery by the respondent McLeod of the cotton to appellant's group of purchased cotton on respondent's platform constitute such delivery to appellant as would relieve respondent of any liability for a subsequent loss thereof?"

Section 2 of the Act of 1935, is as follows:

"Pay—Duties and Powers—Bond.—The cotton weigher elected under the provisions of this Act shall receive twenty (20¢) cents per bale for each bale of cotton weighed by him, ten (10¢) cents to be paid by the buyer and ten (10¢) cents by the seller. Said cotton weigher shall provide his own platform, scales, and other equipment and facilities to perform the duties herein required. And he shall have the right to remove or have removed all cotton placed on his platform after same has remained there twenty-four (24) hours after it has been weighed.

"It shall be the duty of said cotton weigher to make any necessary and proper allowances and deductions in weight of cotton when the same shall be found by him to be wet and to require such deductions and all deductions or allowances made by him shall be binding on the seller and the buyer alike.

"The said cotton weigher shall make and file with the Clerk of Court of Kershaw County a bond in the penal sum of One Thousand Dollars, with sufficient surety, to be approved by said Clerk of Court, conditioned upon the faithful discharge of his duty as such cotton weigher."

In *Armour & Company v. Ross,* 78 S. C., 294, 297, 58 S. E., 941, 942, 1135, quoting from 3 Enc. of Law, 733, the word "bailment" is defined as follows: " 'Bailment is the delivery of goods for some purpose, upon a contract expressed or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims them.' "

Under the facts of this case, and the facts make the law, we cannot distend the doctrine of bailment so as to cover the period of the bailment other than from the time the cotton was delivered for weighing and its placement on the platform with other cotton of appellant. The statute creating the office of public cotton weigher defines the duties of the office, and protects him from being forced to furnish storage space after the cotton has been weighed by giving him the right to require cotton weighed to be removed within 24 hours. Statutes providing for public weighers are upheld as being within the police power of the State; the purpose of such legislation being to secure fair weights for all parties concerned, and to protect both the seller and the public. See 28 R. C. L., § 5, p. 5.

There is no complaint that the bale of cotton was not properly weighed or placed after the weighing, nor that an insufficient platform was furnished. It is undisputed that it was handled according to the usual custom prevailing, and after it was weighed and delivered to the group of cotton belonging to appellant on the platform, appellant, through its agents, took charge of same to the extent of taking a sample therefrom and detaching the stub of the ticket which the cotton weigher had thereon placed.

It would appear that the established custom between appellant and respondent of dealing with cotton delivered to the platform of the respondent McLeod for weighing, when placed in the group of cotton belonging to appellant constitutes at least a constructive redelivery to appellant, and that in the instant case, where appellant took possession of

same by sampling the cotton and removing therefrom the stub to the ticket which had been placed thereon by the respondent McLeod, there was actual redelivery.

Had it been the intent of the Legislature to have cotton weighers become responsible against theft of cotton for the first 24 hours it is placed on the platform, such responsibility could easily have been incorporated in the act, and cotton weighers put on notice to protect themselves by requiring cotton to be receipted for when removed from the platform, or sold or traded to others, and the employment of a night watchman for such cotton as remained overnight.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.