Gorman, J.
Heard on motion for new trial.
This cause is here on appeal from a judgment of the justice of the peace. The action is one brought by the plaintiff, Jacob Baum, in replevin to recover the possession of a safe. The evidence and the record disclose that the action was begun against the defendant, who is the assignee in trust for the benefit of the creditors of Harry Arenberg, after the deed of assignment was executed, delivered and filed in the Court of Insolvency of Hamilton County, and after the assignee had qualified and was in actual possession of the safe taken under the proceedings in replevin. The constable in ,the action before the justice took possession of the safe, held it until the day set for trial as the statute provides, and on that day, the plaintiff having given the bond required by the statute, turned the safe oyer to plaintiff. No re-delivery bond was ever executed or given by the defendant assignee, and the safe continued to remain in the possession of plaintiff up to the day of trial in this court, and he is still in his possession so far as the record discloses.
On the trial before this court on the appeal from the justice, the evidence brought out showed conclusively that the safe in question was originally sold by the plaintiff to Harry Arenberg about seven months before Arenberg made an assignment for the benefit of creditors to Joseph T. Harrison. The agreement to purchase the safe was in writing and provided that the sale price of the safe should be $400; an old safe of Arenberg’s was to be taken as part payment at an agreed price of $100. Arenberg was to pay $50 cash on delivery of the safe, and the balance in installments of $25 every two months thereafter, until the purchase price was fully paid; and the written agreement further provided that the title to the safe thus sold and the ownership thereof were to remain in the vendor, Jacob Baum, until the deferred installments of the purchase price were fully paid. This agreement was duly signed, witnessed and acknowledged by Arenberg and on December 31, 1907, /oar days after the deed of assignment was filed, this agreement or a copy thereof with the affidavit required by the statute; Section 4155-2, Revised Statutes, was filed with the recorder of Hamilton county, • and before this action was commenced in the justice’s court.
*259 The evidence further disclosed that Arenberg never paid the $50 which was to have been paid on delivery of the safe, but that the safe was delivered without receiving this payment some time in April, 1907, and numerous demands were made on Arenberg by plaintiff’s agents to make this- payment. In August, 1907, the defendant executed and delivered to plaintiff twelve promissory notes each for $25 and all dated August —, 1907, about three months after the delivery of the safe and the execution of the contract of sale. One of these notes for $25 was paid by Arenberg before the assignment to Harrison was made. The evidence further disclosed that the plaintiff still has the remaining eleven notes and Arenberg’s old safe, and that he never refunded or tendered to Arenberg or Harrison, his assignee, any money or offered or tendered back the notes or the old safe turned in at $100. The notes given by Arenberg contain a condition similar to that contained in the contract of sale, to-wit, that the title and ownership of the safe were to remain in Jacob Baum until all the notes were fully paid; but neither were these notes- nor copies thereof ever filed with the recorder of Hamilton county.
Upon the close of plaintiff’s evidence, defendant offered testimony which was admitted without objection that the safe at the time it was taken under the proceedings in replevin was reasonably worth $250. There was no other evidence as to the value of the safe when it was taken or at any other time. It was in the possession of Arenberg and his assignee, Harrison, about seven months. There was no evidence offered by defendant as to the reasonable value of the use of the -safe since it was taken in replevin, nor was there any evidence tending to show that the defendant, Harrison, assignee, suffered any damages by reason of the detention of the safe since it was taken by-virtue of the writ issued by the justice on the trial below.
The original contract containing the recorder’s file marks and the notes were offered and admitted in evidence. This was practically all the evidence offered by either of the parties.
At the conclusion of all the evidence the court instructed the jury that inasmuch as the evidence showed the transaction between Baum and Arenberg to be a contract of conditional sale, as provided for in Sections 4155-2 to 4155-4, Revised Statutes, *260 and as plaintiff failed, before the commencement of the action, to tender or refund any money, the notes or the old safe, that he could not maintain the action, and that on the plaintiff’s evidence their verdict must be in favor of the defendant; and as provided in Section 6620, Revised Statutes-, the jury were instructed to find the damages which the defendant suffered, which was the value of the safe when taken as shown by the evidence. Under these instructions the jury returned a verdict in favor of the defendant and against the plaintiff for $250 and one cent damages for the wrongful detention.
The motion for a new trial is predicated on the ground: That the jury should have been instructed for .the plaintiff and not for the defendant for the following reasons:
First. It is urged by counsel for plaintiff that the failure of plaintiff to tender back any portion of the money, the notes or the old safe was not a condition precedent to the right of plaintiff to maintain the action in replevin, because it is claimed that the old safe and the notes, or at least the notes were not payments, and that aside from the notes and the old safe taken in at $100, there was actually paid but $25, the amount of one of the notes, less than 25 per cent, of the contract price. On this point the court was at the time of the trial, and is still of the opinion that the notes were given and accepted three months after the sale of the safe as part payment, and that the plaintiff was bound to tender back the notes, old safe and the cash payment, less- a reasonable compensation for the use of the safe during the time it was in Arenberg’s possession, before he could take possession of the safe, either with or without process of law. It seems to the court that it was the intention of the Legislature to restore to the vendee what he had parted with under the contract, in case the vendor rescinds the contract by taking possession of the goods and chattels, and to compensate the vendor for the injury, if any, done to the goods and chattels, and allow him a reasonable 'sum for the use the vendee has had of the property while in his possession. A fair and equitable construction of Section 4155-3, Revised Statutes, would lead one to believe that this was what the Legislature had in mind when it enacted this section, and that the thing to be tendered or refunded was not only the actual money paid under the contract, but the equiva *261 lent thereof in the shape of 'other property and notes. It wordd be inequitable and unjust to permit the vendor to retain valuable property and notes of the vendee and at the same time recover back the goods and chattels for which, or in part for which, these things other than money were given. This would be a case with a vengeance of one “having his loaf and eating it too.”
But it is not urged so strongly that nothing should, have been tendered back, but that all that the plaintiff was required to tender back, if anything, was 50 per cent, of the value of the old safe ($100), and the $25 cash paid in taking up one of the notes —in all 50 per cent, of $125, or $62.50. The statute does not make the vendor the sole judge of the amount he shall retain. It provides that -he must tender or refund the sum or sums paid, deducting therefrom a reasonable compensation, etc., not to exceed 50 per cent, of the amount so paid; so that upon this view of the case the plaintiff as a condition precedent to bringing the action in replevin must have. tendered or refunded at the very least $62.50 and perhaps as much as $125.
It is claimed by counsel for plaintiff that this sum represents the maximum amount which the defendant should have recovered as his damages at the hands of the jury, and that the court erred in instructing them that they should return a verdict for the value of the safe as shown by the evidence. It is claimed that this contention is supported by the decisions of the Supreme Court in the eases of Speyer v. Baker, 59 O. S., 11, and National Cash Register v. Cervone, 76 O. S., 12.
In the first of these cases, 59 O. S., 11, the court held that the purchaser was entitled to the possession of the property, even though he be in default for payments, until the seller refunds or offers to refund the amount paid less reasonable compensation for its use and for any damages, and that the sum which the purchaser is so entitled to have refunded constitutes the value of his right of possession, and should be awarded to him as damages when the property is taken in replevin at the suit of the vendor before the amount has1 been refunded.
No doubt this would be the rule of damages in the case at bar if the action were between the original parties to the contract, Baum and Arenberg; but the rights of creditors have intervened through Harrison, the assignee, and as to him and them *262 the rule as to the measure of damages may be and we think is the value of the property taken, as we shall endeavor to show presently, in view of the fact that the provisions as to filing the conditional sale contract had not been complied with when the rights of the creditors of Arenberg had attached by the making of the assignment for the benefit of creditors.
The case above noted in 76 O. S., is a decision sustaining an award of damages by the jury in the common pleas court in favor of the one to whom the vendee of a cash register had sold the chattel which had been purchased under a contract of conditional sale, and upon which th¿ original vendee had paid $82, leaving a balance unpaid and due of $18. The amount of the verdict was $54, and the court lays down the rule that the measure of damages in a replevin case against one who has purchased or holds the property by purchase or transfer from the original vendee is the same as in an action in replevin between the original vendor and vendee; and on the facts involved in the above two cases, it can not be doubted that the rule of damages is correctly stated.
But suppose in those cases it had appeared that the original vendor retained notes which covered the entire purchase money, and had made no offer to return them or any money paid, but that the notes were a valid outstanding obligation of the original vendee, and that the payment of the notes would be a payment of the entire purchase money, would not the measure of damages, even between the original parties, under such circumstances be the value of the property when taken? Would the original vendor, in a case of that kind, have any right to take possession at all, even if he tendered back the notes and the old safe? Would not the vendee have the right to say: “You took my notes in payment of my obligation under the- contract, and I want to stand upon these notes. If they are not paid at maturity you have your remedy in an action on the notes. ’ ’
But if it be conceded that the rule of the measure of damages is as claimed by counsel for plaintiff, when the case is between the original parties or their transferees, other than their assignees for the benefit of creditors, nevertheless in the case at bar the defendant being the representative of all Arenberg’s creditors,' including plaintiff, the loss which he sustained by rea *263 son of the taking of the safe was not the sum or sums paid on the purchase price by Arenberg, but it was the loss of the safe or the fair reasonable value thereof. If the plaintiff had not the right to take the safe from the defendant, Harrison, as assignee, then the assignee was in the position of a tona fide purchaser for value, and as such entitled to the value of the property taken; and this brings us to the second ground of objection of plaintiff’s counsel that the verdict should be set aside, viz.:
■ Second. The assignee, Harrison, by virtue of the assignment made to him for the equal benefit of all Arenberg’s creditors, took no better title or higher rights in the property than his assignor,. Arenberg, possessed. This claim of plaintiff’s counsel is not supported by the authorities in this state. The conditional sales act (Section 4155-2), among other things, provides that the condition that the title shall remain in the seller until the property is paid for, shall be void as to all subsequent purchasers, mortgagees in good faith and creditors, unless the agreement containing the condition is reduced to writing and it, or a copy thereof duly verified, filed with the township clerk or county recorder when the office of the recorder is in the township where the person signing the writing resides. Now the undisputed evidence in this case shows that the agreement in this case was not filed until four days after Arenberg made his assignment for the benefit of all his creditors to Joseph T. Harrison, the assignee and defendant herein. The only question therefore is: Does the defendant, Harrison, occupy the position of a subsequent purchaser in good faith or a creditor of Arenberg?
It was held in the case of Hanes v. Tiffany, 25 O. S., p. 549, the leading ease in this state on the question, that a chattel mortgage void as to creditors is void as against the assignee in trust for the benefit of creditors, and that where a chattel mortgage is good as against the mortgagor, nevertheless because the affidavit required by the statute, Section 4154, Revised Statutes, was defective, although the chattel mortgage was duly filed as the law required, the mortgage was void as to the -assignee of creditors; and in a replevin by the mortgagee against the assignee of the mortgagor for the benefit of creditors it was held that although the mortgagee could have recovered as against the mortgagor, he could not against his assignee. On pages 552 and 553 the court *264 says that while it is true that at common law the mortgage defectively executed, was good as against the mortgagor, and that the assignee stands in no better situation than the assignor, this rule does not apply under our statute because the statute, Section 4150, declares that such a mortgage is void as against the creditors of the mortgagor, and the rights of the creditors may be as effectually asserted through the assignee as they could be by judgment and execution in case there had been no assignment.
This case has never been reversed or modified and it has been cited, approved and followed in numerous cases since decided in this state. See Jones v. Mostler, 11 C. C., 432; Kilbourne v. Fay, 29 O. S., 264; Westlake v. Westlake, 47 O. S., 315; Blandy v. Benedict, 42 O. S., 295; Betz v. Snyder, 48 O. S., 492-497; Cheney v. Maumee Cycle Co., 64 O. S., 205; Ohio Valley Bank v. Waldron Iron Works, 30 Bull., 382; Assignment of Cook, 6 N. P. —N. S., 298-302; Boyer v. Howland, 11 O. C.—N. S., 564; Besuden v. Besuden, 57 O. S., 508-517.
In the last case above noted (57 O. S.), the court on page 517 says:
“An assignment for the benefit of creditors of an insolvent debtor is the equivalent, for the protection of their rights against prior mortgages, to the levy of execution on the property at the suit of each of the creditors and operates as the seizure of the property by legal process on behalf of each and all the creditors from the date of the assignment. Hence if the mortgages are void .as against the execution creditors, they are so for all the purposes of the assignment and as against all who were creditors at the time it took effect.”
Now the provisions in Section 4150, relating to the filing of chattel mortgages and as against whom'they will be void is identically the same as the provision in Section 4155-2 of the conditional sales act. In Section 4150 it is provided that a chattel mortgage not filed as provided therein, “shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers and mortgagees in good faith.”
The language in the conditional sales act (Section 4155-2) is that, “such condition in regard to the title so remaining (in the vendor) until such payment shall be void as to all subsequent purchasers and mortgagees in good faith and creditors unless, etc., filed.”
*265 It will therefore be seen that if the statute relating to unfiled chattel mortgages places creditors and the assignee for creditors in a better position than the mortgagor, the same rule ought to be applied to the statute affecting unfiled conditional sales contracts, for the language in the one is the same as in the other.
Furthermore it is to be observed from an examination of those authorities which have dealt with the rights of the assignee for creditors in property hAd by the assignor under an agreement of conditional sale, that the same rule laid down in Hanes v. Tiffany, supra, and Besuden v. Besuden, supra, has been applied. See following cases above cited. Jones v. Mostter, 11 C. C., 432; Assignment of Cook, 6 N. P.—N. S., 298-302; Boyer v. Howland, 11 C. C.—N. S., 564; York Mfg. Co. v. Cassel, 201 U. S., 344; Id., 4 O. L. Rep., 327; Id. (C. C. A.), 135 Fed. R., 52.
But is'is urged that the Supreme Court in the case of Hodgson v. Barrett, 33 O. S., 63, has laid down the rule that the assignee has no higher or better rights than those of the debtor before the assignment. And it is therefore • claimed that inasmuch as the debtor, Arenberg, could not defend against the plaintiff in replevin on the ground that the conditional sales contract was not filed, therefore his assignee for the benefit of creditors can not do so. There was no statute involved in the ca¡se in 33 O. S., such as the .chattel mortgage statute and the conditional sales act, but the court was only laying down the general equity doctrine and there can be no doubt of the correctness of the rule there announced; but where the recording act is involved it will be found that in every case decided it has been held that .the general equity rule stated in 33 O. S. case has been displaced and overthrown by the recording statute making void all liens not filed or recorded in strict compliance with the statute, as to persons therein named against whom the paper shall be void if not filed or recorded.
But it is urged that the Supreme Court of the United States in a case that went up from Hamilton County (The York Mfg. Co. v. Cassel, 201 U. S., 344), has held that a trustee in bankruptcy, except in case of fraud, is vested with no better right or title to the property than the bankrupt had, and that also as to property held under a conditional sales contract in Ohio, but not filed in accordance with the provisions of the statute. This deci *266 sion is not inconsistent with the holdings of our courts in the cases cited as to unfiled chattel mortgages and conditional sales contracts where an assignee for creditors has been qualified and taken possession.
By Section 70 of the Bankruptcy Act as amended in 1903 it is provided that the trustee of the estate of a bankrupt upon his appointment and qualification, etc., shall he vested hy operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, etc., to all, etc., the bankrupt’s property and enumerates the property, the title to which vests by operation of law in the trustee.
It will therefore be seen that by the bankruptcy act the trustee succeeds only to the rights of the bankrupt in his property. The trustee simply stands in the shoes of the bankrupt as was. said in the above case by Justice Peckham. But the title of an assignee under a deed of assignment is something more than the assignee had. Judge Williams, announcing the opinion of the court in Betz v. Snyder, 48 O. S., at pages 496-7 says:
“The common law rule that an assignee for the benefit of creditors succeeds only to the rights of the assignor in the property at the time of the assignment, and takes it subject to all the equities and liens which could have been asserted against it had the assignment not been made, is not without important exceptions in this state growing out of our legislation. It is well settled that chattel mortgages which fail to conform in any substantial requirement to the provisions of the statute relating to their execution or registry though good as against the mortgagor and the property while it is retained by him, are ineffectual as liens upon the property after it has passed into the hands of the assignee for the benefit of creditors of' the mortgagor under an assignment made subsequently to the execution of the mortgage. ’ ’
And on page 498 he says:.
“The assignment, therefore, as effectually fixes the rights of the creditors to the property and establishes their priority over the mortgage as if they had taken the property on execution or attachment. ’ ’
It seems strange that the Supreme Court of the United States should agree with the Circuit Court of Appeals of the Sixth Circuit, in the York Mfg. Co. case, that the statute relating to *267 the filing of conditional sales contracts would render the unfiled contract void as to the same class of creditors mentioned in the chattel mortgage statute, and yet fail to apply the rule laid down by the Supreme Court of Ohio in unfiled chattel mortgage cases to conditional sales cases. Decisions of the Supreme Court of Ohio are not wanting which hold that creditors through the assignee do fasten upon the property covered by an unfiled chattel mortgage a specific lien which is in its nature a levy as upon execution, and an attachment for the benefit of each and every general creditor, and that this lien is fastened upon the property by the filing of the deed of assignment in the court having jurisdiction to administer the estate of the assignor. • We are satisfied, however, that the Supreme Court of the United States in the above cited case preferred to rest its decision on the bankruptcy act, which vests in the trustee only such rights as the bankrupt had in his property, rather than lay down a rule of construction as to the conditional sales act touching the matter of filing the contract, in the absence of a decision of the Supreme Court of Ohio directly on the point.
Even if the Supreme Court of the United States had laid down a rule contrary to that laid down by the Supreme Court of Ohio, we should feel bound to follow the decision of our own supreme judicial tribunal rather than the Federal Supreme Court, inasmuch as the last named tribunal as a rule follows the state courts in the interpretation and application of the state statutes.
The court is therefore of the opinion that even if the grounds upon which the court directed the jury to return a verdict for the defendant and against the plaintiff for damages, were not the correct ones, nevertheless the verdict was properly returned in favor of the defendant, the assignee, and in the absence of any conflicting testimony or evidencé as to the value of the safe when taken undér the replevin, the jury could not return a verdict under the law and the evidence for less than the amount which the uneontradieted evidence showed the safe to be worth, $250. The motion for a new trial will therefore be overruled.